[Civ. No. 879.　Third Appellate District.—February 15, 1912.]

## MARIA S. NETO, Appellant, v. CONSELHO AMOR DA SOCIEDADE NO. 41, etc., et al., Respondents.

VOLUNTARY BENEFICIAL SOCIETY—CONDITION OF MEMBERSHIP—EXPULSION FOR JOINING SIMILAR SOCIETY—PROPER REGULATION—AGREEMENT—PRESUMPTION.—Where under the constitution and laws of a voluntary, social, fraternal and beneficial society, it was made a condition of membership therein that expulsion should follow the joining of another similar organization, it is held that such regulation is not opposed to public policy, or to any provision of law, and is within the scope of the charter provisions of the organization, which constitute the agreement of its members, each of whom is presumed to know the terms and conditions upon which he may retain his connection with the organization.

ID.—POWER OF MEMBERS OF VOLUNTARY ASSOCIATION.—Individuals who form themselves into a voluntary association may agree to be governed by such rules as they see fit to adopt, so long as they are not immoral, or contrary to public policy or the law of the land, and may prescribe the conditions upon which membership may be acquired, or upon which it may continue, and may also prescribe rules of conduct for themselves during their membership, and the tribunal and mode in which offenses shall be determined, and the penalty enforced.

ID.—VIOLATION OF RULES BY MEMBER—EXPULSION—MISTAKE OF LAW—EXHAUSTION OF REMEDIES REQUIRED BEFORE SUIT—DEFENSE.—Where a member has violated the existing rules of a voluntary society by joining another similar society, such member's mistaken view of the existing law cannot affect a judgment of expulsion, and a member who has been tried and found guilty of such violation must first exhaust all the remedies prescribed by the constitution and rules of the society regulating expulsion, before seeking relief in a state court, and the failure to do so would be a complete defense to any suit for relief therein.

ID.—REMEDY BY MANDAMUS—EQUITABLE NATURE—IMPROPER APPLICATION.—A member who has been expelled and has failed to exhaust the remedies prescribed by the order in relation thereto, and who admits the violation of the rules of the order, providing for expulsion, and merely claims that the expulsion was irregular, cannot invoke the remedy by *mandamus* to compel a reinstatement of such member. The remedy so sought is of an equitable nature, which presupposes a wrong to be redressed and a right to be restored; and a petitioner therefor who, while continuing to violate rules requiring expulsion, assumes the attitude of seeking to annul an irregular expulsion, in order to be regularly expelled, is not entitled to the writ of mandate for such a vain and nugatory purpose.

ID.—DESIGN OF WRIT OF MANDATE—SUBSTANTIAL JUSTICE.—The writ of mandate is not to be issued on mere technical grounds. Its design is to do substantial justice and prevent substantial injury.

ID.—SUBSTANTIAL RIGHTS OF APPELLANT NOT INVADED.—It is held on petition for rehearing that no substantial rights of the appellant appear to have been invaded.

APPEAL from a judgment of the Superior Court of Mendocino County, and from an order denying a new trial. J. Q. White, Judge.

The facts are stated in the opinion of the court.

Louis Gonsalves, T. J. Weldon, and W. D. L. Held, for Appellant.

F. L. De Freitas, and Langan & Mendenhall, for Respondents.

BURNETT, J.—Respondent, Conselho 41, is a social, fraternal and beneficial organization composed of Portuguese women. Of this appellant became a member on the fifteenth day of September, 1901, and retained her membership therein until January 20, 1907, when she was expelled. On the 1st of July, 1906, appellant became a member and the president of another similar organization known as the U. P. P. E. C., and which for the sake of brevity, will be referred to hereafter as the U. P.'s. For the same reason we shall designate respondent association as the S. P.'s. In July, 1901, the supreme council of the S. P.'s adopted a resolution reciting that "Whereas, the society of Portuguese ladies known by the initials U. P. P. E. C. was organized through spite," etc., "Be it resolved that there shall not be admitted into this society any more ladies belonging to the former society. And be it further resolved that no member of this society shall belong to the former under penalty of expulsion." With some elaboration this was formally made a part of the constitution and by-laws by the action of the grand council of the order in July, 1903. When the local society was organized the members present, including appellant, were informed by the installing officer that it was a law of the order that a lady belonging to the S. P.'s could not join the U. P.'s under pen-

alty of expulsion. In appellant's application for membership she declared, among other things, that she accepted and acknowledged "that the statement of the laws and regulations of the society constitute an express condition without which I shall have no right to participate or enjoy the benefits or any privileges of same." That such regulation is not opposed to public policy, does not contravene any provision of law and is within the scope of the charter provisions of the organization is not controverted nor does it admit of serious question. Nor will anyone dispute, what the authorities hold, that individuals who form themselves into a voluntary association, may agree to be governed by such rules as they see fit to adopt, so long as they are not immoral, contrary to public policy or the law of the land. As said in *Lawson* v. *Hewell*, 118 Cal. 618, [49 L. R. A. 400, 50 Pac. 764], through Mr. Justice Harrison: "Individuals who associate themselves in a voluntary fraternal organization may prescribe conditions upon which membership in the organization may be acquired, or upon which it may continue, and may also prescribe rules of conduct for themselves during their membership, with penalties for their violation, and the tribunal and mode in which the offenses shall be determined and the penalty enforced. These rules constitute their agreement, and unless they contravene some law of the land are regarded in the same light as the terms of any other contract." The rule is, also, that a member is presumed to know the terms of membership and the conditions under which he may retain his connection with the organization. It may be observed, though, that we have here, in addition, evidence of the positive knowledge by appellant of the inhibition as to membership in the other order.

Some time in July, 1906, appellant proffered her dues for membership to the S. P.'s, but they were rejected on the ground that she belonged to the U. P.'s, the president telling her that if she wanted to belong to the former order she must leave the latter, but appellant said she would not, that she belonged to both and always would. Thereafter, on September 16, 1906, written charges were preferred against her in which her membership in the proscribed order was alleged, and a committee of investigation and trial was thereupon appointed in accordance with the rules of the association. She was served with a copy of the charges and notified of the time,

September 17th, set for the hearing by the committee. She appeared at the time and place designated in the notice and, upon the charges being read to her, she replied: "I belong to the U. P. P. E. C. and I will give my decision as the constitution demands." The committee informed the accused that if she desired further time to make further defense it would be granted her. The further hearing was thereupon continued till September 20th, and the accused did not appear. At this last meeting it is at least questionable whether a quorum of the committee was present, but this seems entirely immaterial, as it was simply for the purpose of affording appellant a chance to offer any explanation of her admitted conduct. She declined to take advantage of the opportunity. Her statement to the committee amounted virtually to a plea of guilty to the charge. Manifestly no further evidence was required and the committee reported the proceedings to the council, and upon a unanimous vote, appellant was expelled, as aforesaid. According to the by-laws, the accused was allowed one month to present further evidence to the council to refute the report of the committee, and she had the privilege also within one month of appealing from the judgment of expulsion to the supreme president or to the supreme council. She took no step in either direction, but, more than two years after she was expelled, she filed her petition for a writ of mandate for restoration to membership. This was denied, and hence the appeal. Some objections are made to the proceedings of the committee, but we deem it unnecessary to notice them in detail. They have, however, not escaped our attention. The trial was somewhat less formal than we would expect in a court of justice but no substantial right of appellant was invaded. Every step was taken that is required by the laws of the order. Indeed, if everything had been done exactly as advocated by appellant, the result must have been the same, because there is no kind of pretense that she was not guilty of the charge. Even in her testimony taken at the trial in May, 1909, she said: "The Mendocino Council U. P. P. E. C. was organized the first Sunday of July, 1906, with nineteen members, and I was elected president." She further declared that when she appeared before the committee as aforesaid and was asked if she belonged to the U. P. P. E. C. she answered "yes, and I am still a member of the U. P. P. E. C. and have been since

I first joined.'' The whole proceeding, in fact, shows that there was no controversy as to her membership in the U. P.'s or that she intended to continue as such. Her attempted justification at the trial was that when she joined the U. P.'s she accepted the law to be as contained in the 1900 edition of the constitution of the S. P.'s given her by the organizer of the local council. This did not contain the provision in question, since the amendment was adopted, as we have seen, in July, 1901. Her mistaken view of the law cannot affect, of course, the judgment of expulsion.

Again, since she was regularly tried according to the regulations of the order, she should have ''exhausted the remedies prescribed by the constitution and by-laws of said defendant relative to her alleged expulsion.'' She alleged in her complaint that she had done so, but this is directly opposed to the evidence.

In *Levy* v. *Magnolia Lodge I. O. O. F.*, 110 Cal. 307, [42 Pac. 890], it is said: ''Yet the fact that the laws of the lodge provided a remedy for the grievance complained of, which he had not pursued and exhausted, would have been a perfect defense to his action in any state court [citing cases]. On the same principle, courts of equity decline to interfere with voluntary benevolent associations so long as the means of relief provided by the society itself have not been availed of and exhausted. (*Lafond* v. *Deems*, 81 N. Y. 507; *Dolan* v. *Court of Good Samaritan*, 128 Mass. 437; *Chamberlain* v. *Lincoln*, 129 Mass. 70.)''

In *Lawson* v. *Hewell*, 118 Cal. 613, [49 L. R. A. 400, 50 Pac. 763], also, it is declared: ''The proceedings against the plaintiff are shown by the complaint to have been taken in strict accordance with the rules of the order. He has received notice of the hearing and he has shown no facts which authorize the conclusion that he will not receive a fair and impartial hearing. From the decision at that hearing he can seek redress by an appeal to the grand chapter. So long as he has this right of redress within the order he has no right to invoke the aid of the courts.''

This rule, it may be said, does not apply where the order has violated its own laws and regulations and has arbitrarily invaded private rights, as was the case in *Schou* v. *Sotoyome Tribe,* 140 Cal. 254, [73 Pac. 996], where it was justly held

that "Although, as a general rule, one who has become a member of a benevolent order is not entitled to appeal to the courts for redress until after he has adopted the lawful procedure and exhausted the lawful remedies prescribed by the constitution and by-laws of the order; yet where sick benefits were sought on behalf of an insane member by his wife as guardian of his person and estate, and the order violated its own laws in not giving her any notice or opportunity to produce testimony in behalf of her husband before an adverse decision against him in the order, and on appeal to the great council, the court has jurisdiction to hear and determine the merits of the controversy." Here, as we have seen, the charges were preferred, notice given, hearing had, report made by the committee, and expulsion adjudged substantially in accordance with the rules of the order. If we admit that there was any informality in the proceeding, it does not carry us beyond the conclusion that appellant should have pursued the remedies provided by the regulations of the society.

Again, the trial court would be justified in taking this view of the situation: The remedy sought by appellant is equitable in its nature. It presupposes a wrong to be redressed, a right to be restored. Its invocation is based upon the assumption that appellant is entitled to the privileges of which she has been despoiled, that she has not forfeited her claims to membership in the order, and that justice and reason require her restoration to her former status. The proof, however, upon which was predicated the demand for the issuance of this extraordinary equitable remedy, discloses the fact that appellant admitted before the committee that she was guilty of the offense charged, and at the time of the trial herein—more than two years after her expulsion—as we have seen, she declared under oath that she was still a member of the other society, thereby revealing her continued violation of the by-law in question. Her position, then, before the court assumed the attitude of one seeking the annulment of an irregular expulsion in order that she might be regularly expelled. The writ of mandate should not be issued for such a vain and nugatory purpose. It is not issued on mere technical grounds. Its design is to do substantial justice and prevent substantial injury. (*State ex rel. Young* v. *Temperance Ben. Assn.*, 42 Mo. App. 485; *Burton* v. *St. George Society*, 28 Mich. 261.)

Some other considerations are discussed by counsel, but we can see no substantial merit in the appeal and the judgment is, therefore, affirmed.

Hart, J., and Chipman, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 15, 1912, and the following opinion then rendered thereon:

BURNETT, J.—In her petition for rehearing appellant calls attention to the fact that, contrary to a recital in the opinion heretofore filed herein, it was expressly admitted by respondents at the trial of this action that the charges preferred against her were not read to appellant by the investigating committee. The statement in the opinion was based upon the recitals in the minutes of the council containing the report of the committee. These minutes were admitted in evidence, and it appears therein that "a copy of the charges was duly served on the accused sister, and she with the committee met at the city of Mendocino, county of Mendocino, state of California, on the seventeenth day of September, 1906. *The charges were then read to the accused sister by a member of the committee,*" etc. But the matter seems to be entirely immaterial, as she had been served with a copy of the charges and there is no contention that she was not fully informed of the nature of the accusation or that the laws of the order required the charges to be read to her by the committee.

Appellant makes a distinction between being a member and *persisting* in being a member of the proscribed order. However, since she admitted she was a member of the U. P.'s and manifested no inclination or purpose to give up her membership therein, it seems reasonable to conclude that she intended to "persevere" in said connection. It may be remarked, also, that the record shows that some time before the charges were preferred against her, she attended a meeting of the S. P.'s, and tendered her dues to the secretary, who refused to accept them on the ground that appellant had joined the U. P.'s. The president told her "if she belonged to ours she must leave the other," and she said: "I won't; I belong to the two and I always will." While this evidence was not taken by the committee at the investigation, it illustrates the attitude of appel-

lant during the entire period covered by the trial before the superior court.

If, as contended by appellant, her answer to the committee should be construed as expressing a purpose "to conform to the laws of defendant society in thirty days," it would be difficult to explain why she made no attempt to do so. The by-laws provided that "To the report of the committee the accused can present her further evidence and refutation within a month; and the council shall say if the committee erred or not, shall submit the case to the same or another committee or shall proceed anew with the trial." She did not avail herself of this privilege nor appeal in any way to the constituted authorities of the order.

It cannot be said that hasty action was taken by the council, as appellant was not expelled till more than three months after the report of the committee was made. And while, as already stated, the proceedings in a few particulars were somewhat inartificial, no substantial right of appellant seems to have been invaded, and we think the court was justified in denying the writ.

The specific points made by appellant have been examined, but, as we view the matter, no sufficient reason has been presented for a rehearing of the case. The petition is therefore denied.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 13, 1912.