[Civ. No. 15468. Second Dist., Div. One. Mar. 13, 1947.]

GEORGE J. STOICA et al., Appellants, v. INTERNA-
TIONAL ALLIANCE OF THEATRICAL STAGE EM-
PLOYEES AND MOVING PICTURE MACHINE OP-
ERATORS OF THE UNITED STATES AND CANADA
(a Voluntary Unincorporated Association) et al., Respon-
dents.

Katz, Gallagher & Margolis and Ben Margolis for Appel-
lants.

Bodkin, Breslin & Luddy, Matthew M. Levy, Sidney Samp-
son, Peter E. Giannini and Michael G. Luddy for Respondents.

YORK, P. J.—Plaintiffs instituted the instant action indi-
vidually and as members of Local 44, against defendants, In-
ternational Alliance of Theatrical Stage Employees and Mov-
ing Picture Machine Operators of United States and Canada
(hereinafter referred to as Alliance), its officers and others,
seeking injunctive and declaratory relief.

Alliance, an international labor union affiliated with the
American Federation of Labor, is composed of a large num-
ber of local unions, including Local 44, which is situated in
Hollywood and has assets of $70,000 in personal property and
closed shop collective bargaining agreements with motion
picture producers covering specified types of work. The Alli-

ance, the local, and the members of both are governed by a constitution and by-laws, a copy of which is attached to the complaint herein.

The instant litigation arose when defendant Alliance took control of the affairs and property of Local 44 after the existence of an emergency had been declared. The circumstances surrounding the so-called "take-over" are the following:

On March 12, 1945, the set designers, illustrators and decorators, Local 1421 of the Brotherhood of Painters, Decorators and Paperhangers of America, AFL, declared a strike and established picket lines at the motion picture studios where members of Local 44 were employed and with which said local had collective bargaining agreements. On the same day, defendant Walsh, as International President of Alliance, issued an order to the effect that the picket lines of Local 1421 were in direct opposition to the best interest of the general membership of International Alliance of Theatrical Stage Employees. "Therefore instruct your members that they must not in any manner whatsoever violate the Constitution and By-Laws of the International Alliance by refusing to pass through these picket lines or refuse to render service because of them."

These instructions were followed by members of Local 44. However, the motion picture producers demanded of the members of said local that they perform work not covered by local's collective bargaining agreements and which did not fall within its jurisdiction, i. e., work of painters, carpenters and other crafts, the members of which were respecting the picket lines of Local 1421. This resulted in a dispute between Local 44 and its members on the one hand and the motion picture producers on the other as to whether the members of Local 44 should perform work falling outside their regular craft and not covered by their collective bargaining agreements. International President Walsh "purported to settle the dispute . . . by agreeing that the members of said Local 44 should perform all work which they were called upon to perform by the producers regardless of whether said work was covered by their collective bargaining agreements or whether it fell within the jurisdiction of Local 44."

At a regular meeting of the membership of Local 44 on March 27, 1945, a motion was duly made, seconded and carried that the members of Local 44 should not work out of the jurisdiction of their craft. Immediately after said meeting,

a special meeting of the executive board of Local 44 was called, whereupon said board and the officers of said local allegedly "without authority and in defiance of the membership, . . . telegraphed the International Alliance requesting that, by reason of the aforesaid motion . . . it immediately declare a state of emergency and place Local 44 under the supervision of the International office."

Pursuant to the emergency clause contained in article 7, section 16 of the constitution and by-laws of the Alliance, defendant Walsh, acting as International President, on March 29, 1945 "proceeded to take over said Local and to oust its members of all control in the affairs and over the property of said Local." Thereafter, defendant Roy M. Brewer, as representative of the international president, appointed the defendant officers of Local 44 as the agents of Alliance and took over and conducted the affairs of said local "thereby depriving the membership . . . of all control over its affairs and its property." On April 16, 1945, charges were preferred against certain of the plaintiffs to the effect that they "refused, when requested, to perform work which they were capable of doing and which prior to the strike had been performed by other crafts." A trial committee was then appointed to try such plaintiffs on the aforesaid charges, the complaint herein alleging upon information and belief that said "Trial Committee has been instructed to and will, unless restrained by this court, order the expulsion from the International Alliance and from Local 44 of the said charged plaintiffs."

This is an appeal by plaintiffs from a judgment dismissing their "last amended complaint," after defendants' objection to the introduction of any evidence, on the ground that said complaint did not state facts sufficient to constitute a cause of action, had been sustained without leave to amend, the trial court holding that it appeared on the face of the complaint that plaintiffs had failed to exhaust the remedies afforded them by the constitution, and therefore the court had no jurisdiction of the controversy.

In the case of *Bush* v. *International Alliance*, 55 Cal.App. 2d 357, 364 [130 P.2d 788], which involved the same Constitution now under consideration here, it was stated, quoting from *Dingwell* v. *Amalgamated Assn.*, 4 Cal.App. 565, 569 [88 P. 597] : " 'The constitution, rules and by-laws of a voluntary unincorporated association constitute a contract between the association and its members; and the rights and

duties of the members as between themselves and in their relation to the association, in all matters affecting its internal government and the management of its affairs, are measured by the terms of such constitution and by-laws.' . . . See, also, *Lawson* v. *Hewell*, 118 Cal. 613 [50 P. 763, 49 L.R.A. 400]; *Greenwood* v. *Building Trades Council, etc.*, 71 Cal.App. 159 [233 P. 823]; *Grand Grove A. O. of D.* v. *Duchein*, 105 Cal. 219 [38 P. 947]; and *Smith* v. *Kern County Medical Assn.*, 19 Cal.2d 263 [120 P.2d 874].)''

In *Simpson* v. *Salvation Army*, 49 Cal.App.2d 371, 374 [121 P.2d 847], it was stated: ''It is well-settled in this state that a member of an association of this type must first exhaust the rights afforded him by the tribunals of the association before he may secure redress from the courts. (Citing authorities.)

''It is true that there is a limited exception to this rule. Where the organization has violated its own laws and regulations and has arbitrarily violated a member's property rights, such as the right to sick benefits, the member need not exhaust his remedies within the organization before resort is had to the courts. (*Neto* v. *Conselho Amor etc.*, 18 Cal. App. 234 [122 P. 973]; *Schou* v. *Sotoyome Tribe, No. 12*, 140 Cal. 254 [73 P. 996].) Obviously, that exception is not here involved.''

Sections 6 and 7, article 17 of the Constitution of Alliance read as follows:

''Sec. 6. Decisions conclusive. The members of this Alliance shall submit all their rights within the Alliance to the determination of its proper tribunals, and agree that the decision of these tribunals shall be conclusive as to all rights and privileges accruing from membership.

''Sec. 7. Exhausting Internal Remedies. The members of this Alliance further consent to be disciplined in the manner provided by this Constitution and By-Laws, and under no circumstances to resort to the civil courts until all the remedies herein provided shall have been exhausted.''

Appellants submit ''that the Constitution does not provide for any remedy by appeal and that, therefore, the decision of the lower court that internal remedies must be exhausted before resort to the courts is erroneous.'' In this connection it is admitted by appellants that while section 16, article 7 of the constitution governing the control of local unions in an emergency ''does provide for appeal from orders,

rules, mandates and decisions *after* the take over is complete,'' they insist that ''nowhere in this section is there any provision for an appeal from the seizure of the local itself.''

Before considering said section 16 of article 7, it is important to have in mind sections 6 and 14 of the same article, to wit:

''Sec. 6. Interpret Constitution and By-Laws. The laws of this Alliance as contained in this Constitution and By-Laws shall be interpreted by the International President and his decisions thereon shall be binding upon all individual members and affiliated local unions of the Alliance until amended or reversed in the manner hereafter provided.

''The International President shall render decisions upon questions of law where the Constitution and By-Laws contain no express provisions for the determination thereof—his ruling upon such questions shall be made in conformity with the spirit and substance of the Constitution and By-Laws and with regard to the equities of the circumstances.

''Any decision of the International President rendered pursuant to the provisions of this section, shall be subject to appeal to the General Executive Board in the manner provided hereafter in Article Seventeen. . . .

''Sec. 14. Executive Powers. The President shall be the executive head of this Alliance and his duties shall be those duties usually devolving upon the International President or executive officer of similar voluntary organizations and his authority shall be that ordinarily conferred upon similar officers having broad executive powers and in construing this section it is the desire of this Alliance to insist upon a construction which will support the actions of the International President in carrying out the expressed purposes of the Alliance, not only along the lines expressly herein indicated but in a broad general manner, and the International President shall have and is hereby specifically given the power to issue such rules, regulations, orders or mandates as he may deem necessary or advisable in the conduct of his said office. . . .''

Section 16, *supra*, provides that where the international president believes that the ordinary procedure of the constitution and by-laws would prove too slow and cumbersome to adequately protect the rights of Alliance or its locals or membership, he may with the consent of the general executive board declare the existence of a state of emergency in a local

union, whereupon he shall give notice of such state of emergency, in writing, to the officers of said local union. This notice shall be in the form of a complaint forwarded to the officers by mail or by telegram summoning them to a hearing before said international president or his duly accredited representative within 48 hours at a designated time and place, said notice containing a statement of facts upon which the international president relied. During the 48-hour period the authority of local officers is suspended and status quo required to be maintained. At the hearing the officers of the local are entitled to present evidence to the effect that the facts creating the emergency are nonexistent or false. If it appears upon the hearing that a state of emergency does in fact exist, the international president, or his duly accredited representative, "shall have the power during the continuance of such emergency to take over all" of the property of the local union and administer its affairs in every respect. During the period of such emergency neither the local nor the international constitutions have any operation or effect.

Said section further provides: "The sole authority for the conduct of the affairs of such local union during such emergency shall be the orders, rules, mandates and decisions of the International President, the Executive Board and the Vice-President, or International Representative appointed to conduct the affairs of said local union, provided, however, that any officer or member of such union in good standing shall have the right to appeal from any such order, mandate or decision, on account of which he feels aggrieved, to the General Executive Board and from the decision of said Board to the delegates of this Alliance when assembled in convention, as provided in the Constitution in case of appeals from decisions of the President."

As heretofore stated, appellants would interpret the last above quoted paragraph to mean that an appeal can be taken only by an officer or member of the local from an order, mandate or decision rendered after the declaration of emergency and that it does not provide for an appeal from such declaration itself.

It is alleged in the complaint that at the hearing provided for by section 16, *supra*, Roy M. Brewer, the designated representative of the international president, gave to the officers of said Local 44 the opportunity to establish that the facts reported to the international president were not as represented

and that a state of emergency did not in fact exist, by the following interrogatory: "Do the officers of Local Union 44 desire to present evidence to the effect that the facts creating the emergency are non-existent or false?" To this no response was made. He then proceeded to read section 16, article 7, and pursuant thereto "did appoint the defendant officers of Local 44 as the agents of the International Alliance."

This was the first order, mandate or decision made by the international president, acting through his duly authorized representative, after the local was taken over under the emergency clause of the constitution. Under the terms of section 16 of article 7, *supra,* an appeal from such order would bring up for review not only the merits of that order, but also the question of the jurisdiction of the president to declare the emergency itself.

An examination of the constitution and by-laws reveals that the framers thereof sought in every way possible to provide for an appeal by any member aggrieved, from any decision, mandate or order made by any officer of the Alliance, because, in addition to providing specific appeals and in order that there might be no question as to the right of appeal with respect to each and every ruling, article 17, entitled "Appeals" was incorporated in the constitution:

"Sec. 1. Right of Appeal. Any member aggrieved by the decision of a tribunal of the Alliance may appeal his case in the following order (1) from the decision of the local union to the International President of this Alliance; (2) from the decision of the International President to the General Executive Board; (3) from the ruling of the General Executive Board to this Alliance in convention assembled; and the latter body shall be the tribunal of ultimate judgment. . . . in the interim, rulings of any proper tribunal of this Alliance shall be enforced pending disposal of appeal."

Article 20 (Discipline of Local Unions) provides as follows:

"Sec. 6. Appeals. Appeals may be taken from the decisions of the International President upon charges against affiliated local unions in the manner provided by Article Seventeen of this Constitution. Local unions shall exhaust all remedies by appeal within this Alliance and shall be bound by the decisions of its highest tribunal as to all their rights.

"Sec. 7. Emergency. The procedure in cases where a state of emergency exists in a local union as defined in Article

Seven, Section 16 of this Constitution, shall be as set forth therein.''

There is no doubt that the questions here concern the internal government and management of the affairs of the union, and that an appeal lies from any order of the international president, including the order declaring the emergency and any order made by him affecting the rights of members or of the local itself during the period of the emergency.

The good faith of the international president in the exercise of the power given to him under the emergency clause (art. 7, § 16, *supra*), is not questioned. Appellants in their original complaint charged bad faith in their third cause of action therein. However, prior to trial, appellants voluntarily dismissed this cause of action.

In view of the foregoing, it appears that appellants failed to exhaust the remedies afforded to them by the constitution and by-laws of their own organization, and that therefore the trial court had no jurisdiction of the controversy.

The judgment of dismissal is affirmed.

White, J., and Doran, J., concurred.

A petition for a rehearing was denied April 1, 1947, and appellants' petition for a hearing by the Supreme Court was denied May 8, 1947.