[L. A. No. 23488.   In Bank.   Dec. 29, 1955.]

ROBERT A. HOLDERBY, Respondent, v. INTERNA-
TIONAL UNION OF OPERATING ENGINEERS,
LOCAL UNION NO. 12 (an Unincorporated Associa-
tion) et al., Appellants.

Parker, Stanbury, Reese & McGee and Raymond G. Stanbury for Appellants.

Aaron Sapiro for Respondent.

SHENK, J.—This is an appeal by the defendant Local Union Number 12 of the International Union of Operating Engineers from a judgment for the plaintiff Robert A. Holderby in an action in which the plaintiff sought and obtained reinstatement as a member in good standing in the union and damages resulting from his alleged unlawful exclusion therefrom.

The plaintiff became a member of the union in October, 1952. From November, 1952, until March, 1953, he was delinquent in his dues and for that reason was suspended from membership by the executive board of the union on February 5, 1953. Thereafter he applied for reinstatement and assigned illness as the reason for his delinquency. On March 17, 1953, the executive board addressed a letter to him stating the conditions of his reinstatement as follows: ". . . it was the recommendation of the Advisory Board, concurred in by the Executive Board, that you be granted the privilege of Reinstating your membership by the payment of back Per Capita tax, Reinstatement Fee of $5.00, dues for the current month, and three months dues in advance." The executive board waived certain of the above items and gave a credit for $10 paid prior to March 17. It stated in its letter that there remained a balance of $19 due and that in addition it required the plaintiff to furnish a doctor's certificate substantiating his illness. It appears that the requirements for reinstatement were consistent with the union's constitution. On April 29 a report certifying that the plaintiff had been a patient at a veterans' hospital was mailed to the financial secretary of the union. On May 27 the plaintiff made final payment of the amount required for reinstatement plus dues to that date. Soon thereafter he was issued a referral slip for a work assignment on which the notation "dues paid rein 12" appeared. It may be assumed that the notation was in recognition of the payment of dues and the plaintiff's reinstatement in Local 12.

On June 6, 1953, the executive board of the union met and purported to reject the plaintiff's application for reinstatement. The minutes of its meeting state that "A motion was made, seconded and carried that all previous action of

the Executive Board in the case of Robert A. Holderby be rescinded. A motion was made and seconded that the application for reinstatement of Robert A. Holderby be rejected and that all moneys paid into the Local Union by him be refunded. On the motion it was thoroughly established that Holderby was not a qualified engineer and that his actions during the past six months had marked him as an individual undesirable for membership in this Union." The plaintiff received a letter from the union advising him of his rejection and enclosing a check for $138.60 as "the total amount paid in by you on Initiation Fee, Dues, Permits, etc."

On July 1, 1953, the plaintiff commenced the present action. Article XVII, section 1(a) of the union's constitution provides in part as follows: "Any General Officer who shall have filed in a Local Union charges against a member thereof, and any officer or member of a Local Union, may appeal to the General Executive Board from the adoption of any action by said Local Union, or from any decision rendered by the General President. Any Local Union, or member thereof which belongs to a local, State or Provincial Organization or Joint Executive Board may appeal to the General Executive Board from any act or decision of said local, State or Provincial Organization or Joint Executive Board. . . ." Section 3 of that article states: "No suit or other action at law or equity shall be brought in any court by any member, officer or subdivision of the International Union of Operating Engineers until and unless all rights, remedies and provisions for hearing, trial and appeal within the Organization shall have been properly followed and exhausted by the member, officer or subdivision complaining. . . ." Prior to commencing this action the plaintiff did not avail himself of the remedies provided in the constitution for a review by the general executive board of the action taken against him.

The plaintiff claims that on May 27, after he had fully complied with the requirements on which his reinstatement was conditioned, he automatically became fully reinstated to membership in the union; that thereafter the purported denial of his application for reinstatement was in realty an exclusion from membership without compliance with procedures established in the union's constitution, and that he was improperly deprived of valuable rights conferred upon him as a member of the union. (See *Lawson* v. *Hewell*, 118 Cal. 613 [50 P. 763, 49 L.R.A. 400].) There is no question

but that provisions in the union constitution for the expulsion of members were not followed. That document requires that formal charges be filed and a hearing be had.

The trial court agreed with the plaintiff, specifically finding that "in accordance with the said letter of March 17, 1953, the reinstatement of the plaintiff had been completed by May 28, 1953"; that he was a member in good standing on June 6, 1953, the date the alleged exclusionary action took place; that "he was entitled to all the rights and privileges of membership at the said time," and that, "by reason of said action on the part of the Executive Board, plaintiff was thereby in effect, expelled from the defendant Local Union No. 12. . . ."

The foregoing findings of the court are supported by substantial evidence, and on appeal may not be successfully controverted by the defendant. However, it is contended that the plaintiff failed to exhaust the remedies available within the union and that he is not now entitled to judicial relief.

It is the general and well established jurisdictional rule that a plaintiff who seeks judicial relief against an organization of which he is a member must first invoke and exhaust the remedies provided by that organization applicable to his grievance. (*Lawson* v. *Hewell, supra,* 118 Cal. 613; *Levy* v. *Magnolia Lodge No. 29, I.O.O.F.,* 110 Cal. 297 [42 P. 887].) This rule is analogous to the rule requiring the exhaustion of administrative remedies as a condition precedent to resorting to the courts (see 2 Cal.Jur.2d 304), and to the rule requiring the parties to a contract for arbitration of disputes to exhaust those remedies before seeking judicial relief. (See *Cone* v. *Union Oil Co.,* 129 Cal.App.2d 558 [277 P.2d 464], and cases collected at p. 563.) Such rules are based on a practical approach to the solution of internal problems, complaints and grievances that arise between parties functioning pursuant to special and complex agreements or other arrangements. They make possible the settlement of such matters by simple, expeditious and inexpensive procedures, and by persons who, generally, are familiar therewith. Such internal remedies are designed not only to promote the settlement of grievances but also to promote more harmonious relationships, and the courts look with favor upon them.

The plaintiff claims that an exception to the general rule made it unnecessary that he pursue the internal remedies

for review before commencing this action. In *Weber* v. *Marine Cooks' & Stewards' Assn.*, 93 Cal.App.2d 327 [208 P.2d 1009], it is stated at page 338 that "where an organization has violated its own laws and arbitrarily violated a member's property rights the rule of exhaustion of remedies by appeal to a higher body within the organization need not be adhered to before direct resort to a judicial tribunal." (See *Harris* v. *National Union etc. Cooks & Stewards*, 98 Cal. App.2d 733 at 736 [221 P.2d 136].) If such an exception is construed as broadly as the quoted language would permit, it would make it unnecessary for any party with a justified grievance involving personal and property rights against an organization of which he is a member, including the plaintiff in the present case, to have the matter corrected internally by the machinery provided before resorting to the courts. The exception in such a case would swallow the rule, a result clearly not intended by the cases relied on as authority for the broad interpretation sought by the plaintiff to justify this action. ▮ It is only when the organization violates its rules for appellate review or upon a showing that it would be futile to invoke them that the further pursuit of internal relief is excused. The violation of its own rules which inflicts the initial wrong furnishes no right for direct resort to the courts.

The statement of the exception in the Weber case, discussed only incidentally with other points considered determinative, is said to have resulted from a holding in *Simpson* v. *Salvation Army*, 49 Cal.App.2d 371 [121 P.2d 847]. In that case the court set forth the exception in almost identical language, with citations, and then stated at page 375: "Obviously, that exception is not here involved." In one of the two cases there relied on (*Neto* v. *Conselho Amor Da Sociedade*, 18 Cal. App. 234 [122 P. 973]) the court stated the exception, citing the other case as authority therefor, but refused to apply the exception. Thus the authority for the quoted language is easily traced to that other case, *Schou* v. *Sotoyome Tribe, No. 12* (1903), 140 Cal. 254 [73 P. 996]. The holding in that case, however, does not justify the interpretation the plaintiff in the present case would place upon it. There relief was sought by the plaintiff Mrs. Schou in behalf of her husband, a member of the Sotoyome Tribe of the Improved Order of Redmen of California, a fraternal and benevolent organization. His application for sick benefits was refused on the ground that the affliction for which he sought relief

was caused by intemperance. The constitution of the organization provided that "should any person feel aggrieved at the action of a tribe for failing to pay benefits that may be claimed to be due, such person must appeal from such action by giving the tribe notice thereof within 20 suns after said action; whereupon the sachem shall without delay appoint a suitable member of the order as a commissioner to take such testimony as either party may offer in relation to the case." For five months after the denial of his application, Mrs. Schou, his legal guardian, made vigorous but unavailing efforts to obtain information of the tribe's decision. The opinion then relates that "Thereafter she was informed by the tribe that 'she would have to take the case before the great sachem.'" In response to this, her attorneys wrote to the great sachem asking him for information as to the proper procedure, and were by the great sachem informed simply that he had no jurisdiction in the matter. Finally, Mrs. Schou's attorneys gave the tribe notice of an appeal 'to the great sachem and great council,' and sent an appeal to the great council, but, so far as she or her attorneys were advised, neither the tribe nor the great council paid any attention to these appeals. No commissioner was appointed to take evidence, no 'ten suns' notice, nor any notice at all, was given, nor was Schou, nor Mrs. Schou upon his behalf, ever allowed to present any evidence. In this condition of affairs, not knowing whether or not she was to be allowed to prosecute her appeal, or if it would be entertained by the great council of the state, and having had no opportunity at all to present her evidence as to Schou's right to the sick benefits" she resorted to court action.

The foregoing account of Mrs. Schou's inability to obtain an appeal within the machinery provided, although she herself complied with all requirements made known to her, caused the court to conclude it to be "perfectly clear" that she "was relieved from further compliance, or attempt at compliance, with the regulations and procedure of the order touching appeals. . . . Before an order can hold a member to strict observance of its rules regulating procedure on appeal it must show that in all matters touching his substantial rights it has itself observed these regulations, and this the defendant did not do. Its dereliction in this regard excuses a claimant from exhausting his remedy within the rules of the order."

It is apparent from the foregoing that the court in the

Schou case excused the plaintiff's further attempt at compliance wtih internal rules of appeal because the organization itself arbitrarily refused to comply with and be governed by those same internal rules of appeal and for all practical purposes it became impossible for the plaintiff to obtain a review of the prior action claimed to be improper. Accordingly, the statement in the Weber case relating to an exception to the general rule "where an organization has violated its own laws," can have reference only to its rules on appeal, the violation of which in effect prevented an aggrieved party from seeking redress thereunder. ■ A violation of other laws and wrongs done within the organization are intended to be conciliated and corrected by the appellate machinery provided therein, if properly invoked by an aggrieved party and applied by the organization. If recourse to such appellate machinery is not sought an aggrieved party foregoes his right to a judicial review regardless of the breach of its own rules by the organization in causing the grievance in the first instance. If the organization fails to apply its appellate machinery after it is properly invoked and in effect prevents an appeal from being taken, the aggrieved party, under the Schou case, need not pursue such an appeal further. Any implications in the statement of the exception to the general rule in the cases heretofore cited are accordingly limited.

■ In the present case the plaintiff made no attempt to obtain an internal appeal, and there is nothing to indicate that an appeal would not have been accorded him in which to seek redress for the alleged wrongs. He falls squarely within the rule that when an internal appeal is open to him he has no right to invoke the aid of the courts.

The judgment is reversed.

Gibson, C. J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

The majority in this case holds that a member of a union cannot obtain relief in the courts when he has been expelled without the notice or hearing required by the union's constitution and by-laws because he did not appeal the expulsion to a higher authority in the union which he had the right to do under the circumstances. This exhaustion of remedies within the union is the universal rule on the subject but there are exceptions to it, one of which is that it does not apply where

the union has violated its own law with respect to expulsions. The majority states that there is no reason for the exception, and that to apply it completely wipes out the rule, and mentions some of the cases upholding the exception, and, in effect, disapproves them, but it does not do so expressly. It has been held in this state that where the union or other unincorporated association fails to give notice and hearing for an expulsion, the member need not exhaust a remedy by appeal under the constitution of the association. (*Swital* v. *Real Estate Comr.*, 116 Cal.App.2d 677 [254 P.2d 587]; *Ellis* v. *American Federation of Labor*, 48 Cal.App.2d 440 [120 P.2d 79]; *Stoica* v. *International etc. Emp.*, 78 Cal.App.2d 533 [178 P.2d 21]; *Weber* v. *Marine Cooks' & Stewards' Assn.*, 93 Cal. App.2d 327 [208 P.2d 1009]; *Smetherham* v. *Laundry Workers' Union*, 44 Cal.App.2d 131 [111 P.2d 948].) The exception is nearly universally recognized. It is said in 168 A.L.R. 1462, 1468, citing cases from California, Georgia, Indiana, Missouri, Nevada, New Jersey, New Mexico, New York, Pennsylvania and the federal courts: ''Where the provisions of the constitution and the bylaws as to suspension or expulsion are not complied with, as where no notice or hearing is given to the member, no written charges are preferred against him as required by the constitution and the bylaws, or where the decision for expulsion is contrary to the constitution and bylaws of the union, or the offense with which the member is charged is not a ground for expulsion, or where the expulsion or suspension is void for lack of authority or jurisdiction in the body or person conducting the trial or rendering the decision for suspension or expulsion, or is otherwise irregular, the requirement that the internal remedies within the union must first be exhausted will not be insisted upon as a condition to grant of equitable relief for reinstatement, as in all these cases the action of expulsion or suspension is not the authorized action of the union, and the member's duty to exhaust first the internal remedies within the union is generally understood as contemplating an action of the union which is authorized under its constitution and the bylaws. In other words, the rule as to exhaustion of internal remedies pre-supposes a legal and regular proceeding for suspension or expulsion.'' (See also 20 A.L.R.2d 531, 565; id., 344, 386; 4 Am.Jur., Associations & Clubs, § 31.) There should be given a definitive reason why those authorities are wrong. Moreover the plaintiff—expelled member—sought damages as well as reinstatement. The appellate body in

the union has no authority to award damages, and inasmuch as it is clear that plaintiff was illegally expelled, it would appear that his right to damages would not be affected by his failure to appeal.

In a case like the one here an appeal would be an idle act and thus unnecessary, for the majority states: ''There is no question but that the provisions in the union's constitution for the expulsion of members were not followed. That document requires that formal charges be filed and a hearing be had.'' That being true the appellate body could do nothing else but reverse the expulsion; if it did not a court would do so. In effect the appeal could serve no useful function.

Finally, it should be remembered that the constitution and by-laws of the union constitute a contract between the members and the association and one of the reasons for the rule that an expelled member must pursue his remedy within the association before resorting to the courts is that the contract requires him to do so. However, where the member has been expelled in violation of that contract the association has repudiated it and it is no longer binding on the member. A breach of contract or a refusal to perform by one of the parties excuses the other party, not at fault, from performance on his part. (*Twomey* v. *People's Ice Co.*, 66 Cal. 233 [5 P. 158] ; *Gold Min. & Water Co.* v. *Swinerton*, 23 Cal.2d 19 [142 P.2d 22] ; *Central Oil Co.* v. *Southern Refining Co.*, 154 Cal. 165 [97 P. 177].) Hence in this case plaintiff was excused from performance of the contract requiring an appeal to a higher authority in the union because of the union's repudiation and violation of the contract requiring a notice and hearing.

I would, therefore, affirm the judgment.