John A. EDSBERG and S. W. Buchanan, Appellants,

v.

LOCAL UNION NO. 12 OF the INTERNATIONAL UNION OF OPERATING ENGINEERS et al., Appellees.

No. 17367.

United States Court of Appeals
Ninth Circuit.

March 5, 1962.

Roger J. Pryor, Compton, Cal., for appellant.

Albert Brundage, Brundage, Hackler & Flaum, Los Angeles, Cal., for appellee.

Before BARNES and DUNIWAY, Circuit Judges, and DAVIS, District Judge.

BARNES, Circuit Judge.

Appellants petitioned for an injunction below. When this was dismissed because no claim was stated, they sought this review.

Appellant are two members of Local Union No. 12 of the International Union of Operating Engineers (hereinafter sometimes referred to as Local Union 12). Both Local Union 12 and the International Union are appellees here and defendants below.

At a meeting of Local Union 12 held on December 3, 1960, (at which some six hundred members were present) it was voted that any change in the By-Laws of Local Union 12 (required by the passage of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 401 et seq., effective December 14, 1959) was postponed to a date after the anticipated election of new officers in June 1961.

This special meeting was subsequent to a partially completed referendum vote by mail on proposed new By-Laws, which changes, appellants assert, were

for the purpose of benefiting the executive board and business manager of Local Union 12. Upon objection made to the International President, he set aside the partially completed vote by mail. Thereafter, contrary to the express vote for delay in such amendments, made at the special meeting, the International President with knowledge of the vote for delay by Local Union 12 ordered a second referendum. It was had; the new By-Laws were approved by a vote of 3,-386 for, to 1,961 against; they were ratified by the International President, and Local Union 12 is now operating under them.

Appellees urge that the entire proceedings relating to the adoption of the new By-Laws triggered by the Landrum-Griffin Bill, complied fully with the By-Laws of Local Union 12, the Constitution of the International Union, all laws of the states involved and the federal laws.

As an example, appellees point out that Article XXIII, Subdivision 12, of the Constitution of the International Union of Operating Engineers provides:

"Local unions may adopt and amend by-laws * * * by a majority vote of the members voting at a regular membership meeting, at a special meeting for that purpose, or in a mail referendum of the membership * * *."

This means, urge appellants, that if a majority of a union's membership present at a meeting (as here) decided to postpone action relating to the amendment of its by-laws, then in good faith the membership cannot vote a contrary conclusion (that it *will* amend its by-laws) at a mail referendum held "immediately" thereafter. But we are referred to no provision of the By-Laws, either local or international, that forbids such a practice. For how long should such a "command" be binding on the membership? At oral argument, the answer given this court to such question was "a reasonable period." No clearer or more precise definition could be offered. And such an unprecise rule might well create more bad than good in union affairs.

But such an interpretation, say appellants, is the only reasonable one that could be adopted, for otherwise the majority of the members voting at the meeting would be disenfranchised. We cannot agree. The will of *that* majority may be overruled by the majority will of a later mail vote. This is not disenfranchisement, but the democratic process of majority rule in action. Such majority may well sway one way or another from time to time. If it did not, the interest of our people in minority parties would quickly disappear; and their will become a hopeless cause.

But whether this is a democratic process or no, it was and is the procedure set up in the By-Laws. No restriction was set up as to how soon after a regular or special meeting majority action could be challenged by the holding of a referendum by mail. Nor can we rewrite the By-Laws to set up such a restriction.

But in any event, say appellants (after a recital of the purposes and policy of the Labor-Management Reporting and Disclosure Act of 1959),[1] Section 101(a) (1) and Section 101(a) (2) of the Act (and

---

1. "* * * Declaration of findings, purposes, and policy: Sec. 2(a).

"The Congress finds that, in the public interest, it continues to be the responsibility of the Federal Government to protect employees' rights to organize, choose their representatives, bargain collectively, and otherwise *engage in concerted activities for their mutual aid or protection.* * * * [Emphasis appellants'.]

"(b) The Congress further finds, from recent investigations in the labor and management fields, that there have been a number of instances of breach of trust, corruption, *disregard of the rights of individual* employees, and other failures to observe *high standards* of responsibility and ethical conduct which requires further and supplementary legislation that will afford *necessary protection* of the rights and interests of employees and the public generally as they relate to the activities of labor organizations, employers * * * and their officers and representatives." (*Emphasis appellants'.*)

perhaps Section 501 of Title V of the Act) [2] permit the filing of the instant action. These two sections read as follows, in pertinent part:

"Sec. 101(a) (1)—*Bill of Rights* of Members of Labor Organizations.

"Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums * * * to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws."

"Sec. 101(a) (2)—*Freedom of Speech and Assembly*.

"Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or *upon any business properly before the meeting,* subject to the organization's *established and reasonable* rules pertaining to the *conduct* of the meetings: Provided * * *." (Emphasis appellants'.)

When pressed to state what portions of these sections had actually been violated in this case, we think it fair to state that appellants fell back on the theory that the legislative intent of the Act had been violated, rather than any specific provision of the Act.

But we need not here finally decide the issue thus presented, because of the defense that appellants have not exhausted their administrative remedies, which defense we find valid and controlling.

When the mail referendum was ordered by the Union's International President,

Mr. Hummel, one of the appellants (in his affidavit supporting his motion for a preliminary injunction) states: "[H]e filed a notice of appeal to the International President in a letter dated December 7, 1960 * * *." That letter was attached as Exhibit A to his affidavit.

This letter was no appeal, nor notice thereof, in the ordinary legal sense. It was an appeal to the conscience of the International President. It urged that he change his mind about the mail referendum and stop it. The letter was acknowledged without commitment or comment.

Thus appellants by their affidavit recognize that there existed procedures for an appeal within the Union's By-Laws. The Constitution of the International Union recognizes the right of appeal (Art. XVII, Section 1(a)). Detailed procedures are set up to accomplish it (Art. XVII, Section 1(b)). Exhaustion of remedies within the Union procedures is required (Art. XVII, Section 4). Cf: also, Art. VI, Section 2; and Art. XVII, Sections 1(c), 2 and 3.

The procedures for appeal so set up do not seem upon first blush too complicated or likely to result in long delays in processing on appeal. And we think it clearly appears from the record no real attempt to exhaust administrative remedies has here been made.

We need not decide whether exhaustion of remedies provided by the Union is an absolute requirement before asking the federal courts to intervene in intra-union activities. Penuelas v. Moreno, S.D.Cal., 1961, 198 F.Supp. 441; Acevedo v. Bookbinders & Machine Operators, Local No. 25, S.D.N.Y., 1961, 196 F.Supp. 308; Smith v. General Truck Drivers, Union Local 467, S.D.Cal., 1960, 181 F.Supp. 14; Holderby v. International Union of Operating Engineers, Local Union No. 12, 1955, 45 Cal.2d 843, 291 P.2d 463. But Cf: Detroy v. American Guild of Variety Artists, 2 Cir. 1961, 286 F.2d 75.

2. On brief, appellants cite other sections of the Act (Sections 101(a) (4); 101(b); 102; and 103), but did not seriously urge these sections on oral argument as controlling.

We find here no uncertain or futile remedy[3] offered to appellants by their own organization. In the absence of such a factual situation, we recognize and reaffirm "the declared policy [of the courts]. favoring self-regulation by unions." Detroy v. American Guild of Variety Artists, supra at 81.

 The federal courts, of limited jurisdiction, cannot and should not intervene in any and every intra-union dispute.

The dismissal of the action below is affirmed.

---

3. See discussion of other reasons for court action, Falsetti v. Local 2026 U.M.W., 400 Pa. 145, 161 A.2d 882. Also see Allen v. Local 92 Iron Workers, 47 L.R. R.M. 2214.