### INTERNATIONAL ASSOCIATION OF MACHINISTS et al., Appellants,

v.

### Al FRIEDMAN, Appellee.

### No. 13819.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 11, 1957.

Decided Feb. 20, 1958.

Petition for Rehearing Denied March 17, 1958.

---

**2.** But cf. Fountain v. Filson, 1949, 336 U.S. 681, 69 S.Ct. 754, 93 L.Ed. 971; 6

Moore, Federal Practice par. 56.12 (1953).

Mr. James L. Highsaw, Jr., Washington, D. C., with whom Mr. Edward J. Hickey, Jr., Washington, D. C., was on the brief, for appellants.

Mr. Victor B. Harris, St. Louis, Mo., with whom Mr. Seymour Krieger, Washington, D. C., was on the brief, for appellee.

Before FAHY, WASHINGTON and DANAHER, Circuit Judges.

FAHY, Circuit Judge.

The problem is whether appellee, Friedman, was expelled from membership in the International Association of Machinists, a labor organization, in a manner which entitles him to judicial redress.[1] The District Court, holding that he had not been afforded minimal fairness in intra-Association appellate procedures, enjoined expulsion for the time being but retained jurisdiction for subsequent consideration of additional proceedings which might be accorded him by the Association.

Appellee was a member of Lodge No. 688 of the Association at St. Louis. He was formally charged by one Weber, member of another Lodge, with violation

1. The case was here before on the question of jurisdiction of the District Court. Friedman v. International Ass'n of Machinists, 95 U.S.App.D.C. 128, 220 F.2d 808, certiorari denied 350 U.S. 824, 76 S.Ct. 51, 100 L.Ed. 736.

of Article XXV, Section 2, of the Grand Lodge Constitution of the Association, "specifically * * * with advocating, encouraging and supporting Communism and also with being a member of the Communist Party."[2] This constitutional provision reads as set forth in the margin.[3]

The Lodge President referred the matter to a Trial Committee[4] which, after a full hearing, found appellee not guilty "due to lack of sufficient and positive evidence." The Lodge affirmed by a membership vote of 95 to 26.[5]

Weber appealed to the International President, hereinafter referred to as the President, by sending to him a letter[6] in which he outlined the charges and his version of the evidence. The President by letter informed the Lodge of the appeal and directed the record to be sent to him.[7] Appellee was present at the Lodge meeting when the President's letter was read. He was not furnished a copy of Weber's appeal letter, nor did he request a copy. He wrote the President that the constitution reserved the right of appeal to a member who had been convicted, and that Weber could not appeal appellee's acquittal by the Lodge.[8] He requested no hearing before the President and none was held. The President, in a rather full written review of the evidence, found that "the record establishes clearly that Defendant Friedman has advocated and encouraged Communism and given support to the spread of the Communist philosophy in the U.S.A." On the basis of the "verbatim transcript" he found that appellee "has supported a movement dual in purpose to the International Association of Machinists in violation of the Grand Lodge Constitution." Under his constitutional authority, and particularly Article XXV, Section 3,[9] the President ordered appellee's expulsion from the Association.

Appellee then appealed to the Executive Council of the Association. His request for an oral hearing there was denied but he was given ample time to prepare and file a brief, through counsel, which he did. The Executive Council sustained the President. He now appealed to the Grand Lodge Convention,[10] where the matter was referred to the Appeals and Grievance Committee in accordance with established procedure. Appellee was granted an oral hearing

2. The full text of the charge is set forth in note 14, infra.

3. Any member or members of any local lodge who attempt to inaugurate or encourage secession from the Grand Lodge or any local lodge, or who advocate, encourage, or attempt to inaugurate any dual labor movement, or who violate the provisions of the Constitution of the Grand Lodge, or the Constitution for Local Lodges, or any member who advocates or encourages Communism, Fascism, Nazism, or any other totalitarian philosophy, or who, by other actions gives support to these "philosophies" or "isms," shall, upon conviction thereof, be deemed guilty of conduct unbecoming a member and subject to fine or expulsion or both.

4. In accordance with Article K, § 2 of the local lodge constitution.

5. See Article K, § 6.

6. Article K, § 9:
   Appeals may be taken from the decision of any local lodge or Grand Lodge Office to the International President * * *.

7. The record consisted of the charges filed, transcript of the trial, report of the Trial Committee, and excerpts from the Lodge minutes dealing with action on the Trial Committee report.

8. He added,
   I do not believe it necessary to detail the lack of merit in the original charges and to cite the abundant supporting evidence in our Constitution which clearly reserves the right of appeal to 'the defendant in a trial case. I request that you deny the plaintiff Weber's appeal forthwith, on the basis that it clearly violates the acquitted defendant's Constitutional rights.

9. Article XXV, § 3:
   The International President and Executive Council shall have authority to expel any member guilty of joining, or participating in any dual organization.

10. See Article XXV, § 6 of the Constitution.

before this Committee, but not otherwise before the Convention as he requested. He was informed that this also accorded with established policy. The Committee reported to the Convention that appellee was guilty of violating Article XXV, Section 2, of the constitution, and recommended his expulsion. The Convention adopted the report and recommendation, followed by appellee's resort to the courts.

On cross motions for summary judgment, heard on the pleadings, exhibits and affidavits of the parties, the District Court found that the evidence which was before the Association "could be the basis for a determination, after proper appellate procedure, that the plaintiff actively engaged in Communist activities, had been issued a card in the Communist Party, and had recruited members of the Communist Party from members of his local lodge." The court also ruled that an appeal to the President was available to Weber, but held, as we have said, that appellee had not been accorded fair appellate procedures.

■ We too find no basis for holding that the evidence was insufficient, and we also agree with the District Court that the constitution, note 6, supra, in providing that appeals may be taken to the President, employs words that are inclusive rather than exclusive, and "it cannot be assumed that the Association intended to leave the discipline of its members entirely in the hands of the members of the local lodge to which a member might belong." This interpretation of the constitution, not inconsistent with its language, has been adopted by the Association's President, Executive Council, and Grand Lodge Convention, which measurably adds to its weight.[11]

■■ We are unable to agree, however, that the procedures within the Association were not adequate. While membership in a labor organization is valuable and may not be illegally taken away, see Friedman v. International Ass'n of Machinists, supra, the courts should not upset the Association's management of its affairs unless its decision is inconsistent with fundamental fairness, or was reached in violation of the organization's own rules, or otherwise constitutes "illegal action." See, for example, Green v. Obergfell, 73 App.D.C. 298, 307, 121 F.2d 46, 55, 138 A.L.R. 258; Davis v. International Alliance, 60 Cal. App.2d 713, 141 P.2d 486; Becker v. Calnan, 313 Mass. 625, 48 N.E.2d 668; Rubens v. Weber, 237 App.Div. 15, 260 N.Y.S. 701, 705 (1st Dep't); Margolis v. Burke, Sup., 53 N.Y.S.2d 157, 161; Simpson v. Grand Int'l, 83 W.Va. 355, 98 S.E. 580, 587.

Appellee did not have a copy of Weber's letter to the President until the case came to court; but this was not such a procedural defect as invalidated the intra-Association proceedings. Appellee rested his case before the President solely upon the legal proposition that no appeal was available to Weber.[12] He knew that Weber had sent in an appeal but he made no effort to learn its content. No rule or regulation covered the matter, and there was no deliberate withholding of information. The decision of the President contains an independent analysis of the transcript, recites that the President had received "a copy of the charges filed by Brother Weber, together with a copy of the transcript of the hearing before the Trial Committee and other information dealing with the case * * * together with his appeal * * *" and states that the President had reviewed "all the testimony and other evidence submitted in this case." Appellee made no further move at the presidential level notwithstanding these recitals. Moreover, appellee subjected the President's decision to attack before the Executive Committee and the Appeals and Grievance Committee of the Grand Lodge Con-

11. Harris v. Missouri Pac. R., D.C.E.D. Ill., 1 F.Supp. 946; Burke v. Monumental Div., Locomotive Engineers, D.C.Md., 273 F. 707, 712. And see, Communica-tions Workers, CIO v. N. L. R. B., 2 Cir., 215 F.2d 835, 838.

12. Appellee concluded his letter to the President as set forth in note 8, supra.

vention, with full knowledge of its content.

■ Appellee also contends that the President could not impose a penalty not prescribed by the Lodge. The point seems to be that Article K, Section 7, of the Constitution for Local Lodges requires a two-thirds vote for expulsion.[13] The point further seems to be bound up with the fact that the charges filed by Weber[14] alleged violations of Article XXV, Section 2, of the Grand Lodge Constitution, while the decision of the President referred "particularly" to Section 3 of that Article, note 9, supra. The solution is that Article XXV, Section 3, gives the President himself authority to expel, independently of Article K, Section 7, if the offense is "joining, or participating in any dual organization." The legislative history of Article XXV, Sections 2 and 3, discussed *infra*, shows that the Communist movement is such a dual organization within the meaning of these provisions.

The President utilized his own expulsion authority after finding that appellee had engaged in activities directed "toward the advancement of the Communist philosophy in the United States" and had "supported a movement dual in purpose to the International Association of Machinists." His decision must fairly be read also as including a finding that appellee had assisted or encouraged the Communist Movement.[15] In setting aside the decision of the Lodge, "based upon the record in the case," he found appellee "guilty and hereby expel him from membership in our Association."

Thus, the President found appellee guilty of the charges, ruled that this constituted participation in a dual organization, and exercised the authority he possessed in such circumstances under Section 3. We find no reason for judicial repudiation of this procedure. It seems a fair and permissible means available to the Association for reaching the conclusion that appellee had encouraged and supported Communism, was a member of the Party, and, accordingly, could be expelled for dualism.

■ Appellee says that the evidence is insufficient to sustain the charges in that it failed to establish that appellee was engaged in Communist activity after April 1, 1949, the effective date of the constitutional provision he was charged with violating. We agree with the District Court in rejecting this contention. The provision adopted April 1, 1949,[16] was declaratory of pre-existing Association law governing membership. As far back as 1925 the Executive Council, then known as the Executive Board, issued official circular No. 183 to the officers and members of all Local Lodges reciting the decision of the Board that the Communist Party had the ultimate purpose of destroying the trade union movement of America and that its secret activities constituted a dual organization to the International Association of Machinists "within the meaning of the terms as set forth in the Constitution, Article XXII," referring to the Association Constitution as it then read. This circular also stated that the Board had adopted a motion that the Communist Party, among other organizations, is an-

13. Sec. 7. The recommendation of the committee may be amended, rejected, or another punishment substituted therefor, by a majority vote of those voting on the question, excepting that it shall require a two-third (⅔) vote of those voting to expel the defendant from membership.

14. I, Lloyd Weber, Card No. 464197, member of Lodge 787, District No. 9, hereby prefer charges against Brother Al Friedman, Card No. H–93065, member of Lodge 688, for violation of Article XXV, Section 2, of the Constitution of the Grand Lodge of the I. A. of M.

Specifically, I charge this Brother with advocating, encouraging and supporting Communism and also with being a member of the Communist Party.

15. The decision states *inter alia:*
While it is agreed that the defendant has a right to think as he chooses, the Grand Lodge Constitution governing our organization makes it obligatory to deny membership in our Association to anyone who assists or encourages the Communist Movement.

16. The charges were filed March 14, 1952.

tagonistic in character and dual in nature to the Association, and all members were notified that on or after October 15, 1925, no member of the Association could hold membership in or affiliation with any such dual organization. The circular said this action was required by the 1924 Convention of the Grand Lodge. Again, under date of February 6, 1947, the Executive Council issued a declaration of policy to all officers and members of all Local Lodges, referring to the circular of August 15, 1925, quoting from it with respect to dual organizations and membership, stating that Communism and other totalitarian ideologies now imposed an even greater threat, and advising that the Executive Council had unanimously resolved that any individual who encourages Communism or other totalitarian philosophies, or supports them, "is not eligible to membership in the I. A. of M."; and that any member of the Association who encourages Communism or other totalitarian philosophies or supports them, is subject to the charge of "improper conduct" and trial under "Article K-Code" and if guilty shall be expelled. The declaration concluded, "it is expected that every local and district lodge, as well as the entire membership will take due notice of the announced policy and be governed accordingly." In a revision of the Association Constitution effective April 1, 1949, the present Article XXV, Section 2, was added.

For us to hold in the above circumstances that the evidence against appellee must associate him with a dual organization subsequent to April 1, 1949, we think would do violence to the Association's right to control its membership in a respect within its competence. The constitution as revised April 1, 1949, embodied a continuation of existing policy in the respects here pertinent, and did not wipe the slate clean to be effective in those respects only *in futuro*. One who desires the advantages of membership ought to be held to the obligation of abiding the organization's rules against communistic dualism.

Considering the foregoing, and other questions raised, in the light of the relationship of judicial review to control by a labor organization of its membership, we think appellee's expulsion should not be restrained. The judgment of the District Court accordingly is reversed, and the case remanded for grant of the motion of the Association for summary judgment.

It is so ordered.