Don VESTAL et al.

v.

James R. HOFFA et al.

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, CHAUFFEURS, WARE-
HOUSEMEN AND HELPERS OF
AMERICA et al.

v.

Don VESTAL et al.

Civ. A. Nos. 6081, 6138.

United States District Court,
M. D. Tennessee,
Nashville Division.

June 11, 1971.

———◆———

Edward C. White, Nashville, Tenn., for plaintiffs and defendants Don Vestal and others.

David Previant, Milwaukee, Wis., for defendant James R. Hoffa and International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America.

Cecil D. Branstetter, Carrol D. Kilgore, Nashville, Tenn., for defendant International Brotherhood of Teamsters etc. and Fitzsimmons, Ellis and Webb.

Fyke Farmer, Nashville, Tenn., for defendant Wingo.

Edward W. Penshorn, San Antonio, Tex., for defendant Shafer.

L. N. D. Wells, Jr., Dallas, Tex., for defendant Miller.

William N. Ozier, Russell F. Morris, Jr., Bass, Berry & Sims, Olin White, Joseph Martin, Robert H. Cowan, Charles L. Cornelius, Jr., Nashville, Tenn., for intervening petitioners.

## MEMORANDUM

MORTON, District Judge.

In Civil Action No. 6081, commenced on March 11, 1971, plaintiffs Don Vestal, John B. Wells, Price Sain, Otto York, Jackie Newell, J. S. Litchford, Robert Hill and Worthy Babb bring suit against James R. Hoffa, Frank E. Fitzsimmons, Murray W. Miller, as Director of the Southern Conference of Teamsters, and as Fourth Vice President of The International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America (hereinafter referred to as Teamsters International), Raymond Shafer, as an International Organizer for Teamsters International, Earl Wingo, James Mathis, William L. Ellis, Teamsters International, the Southern Conference of Teamsters, Joint Council #87 of Teamsters International, and Sam Webb.

An Amended Complaint was filed on March 22, 1971. A Second Amended Complaint and a First Supplemental Complaint were filed on May 5, 1971. While alleging numerous violations of the Labor-Management Reporting and Disclosure Act of 1959, as amended, 29 U.S.C. § 401 *et seq.*, the plaintiffs' basic contentions are that Teamsters International has attempted to impose a trusteeship upon Teamsters Local Union 327 for an unlawful purpose, and without complying with the constitution of Teamsters International.

In Civil Action No. 6138, commenced on April 26, 1971, Teamsters International, Local 327, by authority and direction of the appointed trustee, W. C. Smith, and W. C. Smith, as Trustee of Local 327, bring suit against Don Vestal, Augustus G. Farmer, and Gerald B. Vestal. The basic contention of the plaintiffs in this action is that these defendants have refused to recognize W. C. Smith's authority as Trustee of Local 327, have failed and refused to turn over property and records to him belonging to Local 327, and have continued to assert the rights, and to attempt to exercise the powers, of officials of Local 327.

The two actions were consolidated by consent and a final hearing was held on May 13, 1971. At that time the plaintiffs in Civil Action No. 6081 (hereinafter referred to as the original plaintiffs) took a voluntary nonsuit as to defendants Joint Council #87 and the Southern Conference of Teamsters. The Court also granted motion to dismiss as to defendants Hoffa, Miller, Shafer, Webb, and Fitzsimmons due to insufficiency of service of process and the resulting lack of personal jurisdiction over those defendants. The only defendants then remaining in Civil Action No. 6081 were Teamsters International, Wingo, Ellis and Mathis.

. It has been clearly demonstrated to the Court and conceded by the parties that the General Vice President of Teamsters International, Frank Fitzsimmons, had appointed W. C. Smith to become Trustee of Local 327, and that since April 19, 1971, Mr. Smith has been in control of the Local Union's offices, and has been attempting to conduct the business affairs of said Local. It has also been clearly demonstrated to the Court, and conceded by the parties, that Mr. Don Vestal, who was the elected President of Local 327, and, as a result, served as the Local's General Manager, has conducted active opposition to the actions of Mr. Smith as Trustee. Since the Court agrees with the argument by counsel for the original plaintiffs and by counsel for Teamsters International that a determination of the validity of the trusteeship imposed on Local 327 will basically resolve both of the lawsuits, the Court shall decide that issue first.

Teamsters International has never been properly served as required by Rule 4 of the Federal Rules of Civil Procedure. Teamsters International was served in the same manner and under the same purported authority, T.C.A. 20–235, 238, as those defendants who were dismissed due to insufficiency of service of process. T.C.A. 20–235, 238 provides as follows:

"20–235. *Jurisdiction of persons unavailable to personal service in state —Classes of actions to which applicable.*—Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:

"(a) The transaction of any business within the state;

"(b) Any tortious act or omission within this state;

"(c) The ownership or possession of any interest in property located within this state;

"(d) Entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within this state at the time of contracting;

"(e) Entering into a contract for services to be rendered or for materials to be furnished in this state.

" 'Person' as used herein shall include corporations and all other entities which would be subject to service or process if present in this state. Any such person shall be deemed to have submitted to the jurisdiction of this state who acts in the manner above described through an agent or personal representative."

\* \* \* \* \* \*

"20–238. *Extraterritorial personal service—Proof.*—In addition to service of process on the secretary of state as hereinbefore set forth, personal service of process may be made upon any party outside the state by any person over twenty-one (21) years of age and not a party to the action. No order of court shall be required to constitute such person a proper officer to receive and execute the process. An affidavit of the person serving the process shall be filed with the clerk of the court in which the action is pending, stating the time, manner and place of service."

The original plaintiffs attempted service on defendant Teamsters International in Washington, D. C. through the U. S. Marshal's office. Even though the Marshal's return had not been made as of the date of trial, the Court specifically requested that counsel for the original plaintiffs present argument as to the sufficiency of such a return as a substitute for the affidavit required by T.C.A. 20–238, *supra.* Apparently conceding the insufficiency of such a substitute, counsel for the original plaintiffs requested that time be granted to obtain the affidavit of the officer making service. Such a request at trial was deemed to come too late.

■ Teamsters International has consistently indicated its refusal to voluntarily submit to this Court's jurisdiction, and has consistently contested the propriety of venue in this district especially regarding the original plaintiffs' prayer that Teamsters International be placed in receivership. While counsel for Teamsters International has mistakenly styled its participation in Civil Action No. 6081 as a "special appearance," provision for which is not made by the Federal Rules of Civil Procedure, nevertheless its objections to service of process, ·venue, and personal jurisdiction have been clearly asserted and maintained in compliance with Rule 12, Federal Rules of Civil Procedure. For the above-stated reasons, this Court shall consider, regarding defendant Teamsters International, only those issues that are required for a determination of Civil Action No. 6138. For this reason it becomes unnecessary to consider the contention of Teamsters International that the original plaintiffs should be required to exhaust internal union remedies before bringing suit.

■ One of the original plaintiffs' *main contentions* is that the trusteeship was not imposed in compliance with the requirements of the constitution of Teamsters International and is therefore illegal and invalid under § 302 of the Labor-Management Reporting and Disclosure Act of 1959. 29 U.S.C. § 462. The original plaintiffs further contend that the trusteeship is illegal and invalid because it was not imposed for any of the lawful reasons set forth by § 302, *supra*, which provides:

"Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic proce-

dures, or otherwise carrying out the legitimate objects of such labor organization. Pub.L. 86–257, Title III, § 302, Sept. 14, 1959, 73 Stat. 531."

Regarding these issues, the Court's jurisdiction is based upon § 304 of the L. M.R.D.A. (hereinafter alternatively referred to as the Act), 29 U.S.C. § 464, which provides:

"Sec. 304. (a) Upon the written complaint of any member or subordinate body of a labor organization alleging that such organization has violated the provisions of this title (except section 301) the Secretary shall investigate the complaint and if the Secretary finds probable cause to believe that such violation has occurred and has not been remedied he shall, without disclosing the identity of the complainant, bring a civil action in any district court of the United States having jurisdiction of the labor organization for such relief (including injunctions) as may be appropriate. Any member or subordinate body of a labor organization affected by any violation of this title (except section 301) may bring a civil action in any district court of the United States having jurisdiction of the labor organization for such relief (including injunctions) as may be appropriate.

"(b) For the purpose of actions under this section, district courts of the United States shall be deemed to have jurisdiction of a labor organization (1) in the district in which the principal office of such labor organization is located, or (2) in any district in which its duly authorized officers or agents are engaged in conducting the affairs of the trusteeship.

"(c) In any proceeding pursuant to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing either before the executive board or before such other body as may be provided in accordance with its consti-

tution or bylaws shall be presumed valid for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 302. After the expiration of eighteen months the trusteeship shall be presumed invalid in any such proceeding and its discontinuance shall be decreed unless the labor organization shall show by clear and convincing proof that the continuation of the trusteeship is necessary for a purpose allowable under section 302. In the latter event the court may dismiss the complaint or retain jurisdiction of the cause on such conditions and for such period as it deems appropriate."

As the above section grants jurisdiction to a district court over a labor organization, but not an individual, this Court finds that no cause of action is stated by the original plaintiffs under this section as against the individual defendants, and that this section can confer jurisdiction on this Court only for the purpose of injunctive relief regarding Teamsters International's actions in this district.

In considering the appropriateness of such relief, the Court shall attempt to further the policy and accomplish the purposes for which the Labor-Management Reporting and Disclosure Act of 1959, as amended, was enacted. In order to do so a closer analysis of the Act and its legislative history is necessary.

Section 2 of the L.M.R.D.A., 29 U.S.C. § 401, declares the legislative findings, purposes, and policy upon which the Act was based. In particular subparagraph 2(a) provides:

"The Congress finds that, in the public interest, it continues to be the responsibility of the Federal Government to protect employees' rights to organize, *choose their own representatives*, bargain collectively, and other-

wise engage in concerted activities for their mutual aid or protection; that the relations between employers and labor organizations and the millions of workers they represent have a substantial impact on the commerce of the Nation; and that in order to accomplish the objective of a free flow of commerce it is essential that labor organizations, employers, and their officials adhere to the highest standards of responsibility and ethical conduct in administering the affairs of their organizations, particularly as they affect labor-management relations." (Emphasis supplied.)

■ Title III of the Act, which regulates the area of trusteeships, clearly indicates that Congress intended, however, that the right of employees to choose their own representatives would remain subject to suspension through the imposition of trusteeship by a parent labor organization upon a subordinate labor organization. It appears from the legislative history of the Act that restrictions were placed on such trusteeships due to widespread flagrant abuse of the device.[1] The Act is clearly remedial legislation requiring a liberal interpretation. International Brotherhood of Boilermakers, etc. v. Braswell, 388 F.2d 193 (5th Cir. 1968); Lippi v. Thomas, 298 F.Supp. 242 (M.D.Pa.1969). The Act in its entirety must be construed so as to promote the principle of union democracy. Navarro v. Gannon, 385 F.2d 512 (2d Cir. 1967). These considerations enter into the application of Title III of the Act, and the determination of the validity of a trusteeship imposed thereunder. In light of these considerations the Court shall make that determination in the present case.

Generally, the same contentions and allegations are made as defenses in Civil Action No. 6138 by Mr. Vestal as are made in the original plaintiffs' Second Amended and First Supplemental Complaint in Civil Action No. 6081. In es-

---

1. Senate Report No. 1684, pp. 9–11, June 10, 1958; Cong.Rec. 7365–8, Senate, Apr. 25, 1958; Cong.Rec. 18280, House, Aug. 18, 1958.

sence, these contentions are that Mr. James R. Hoffa initiated a conspiracy, which has been continued through co-conspirators, agents, and servants, essentially all of which are members, and most of whom are officers or employees, of Teamsters International. The alleged objective of the conspiracy was initially to coerce Mr. Vestal into pressuring or persuading a Mr. Vick to change his testimony in a criminal proceeding. Upon Mr. Vestal's failure and refusal to cooperate, the objective of the conspiracy is alleged to have focused upon the destruction of Mr. Vestal as a leader in the affairs of Teamsters International or in Local 327, and personally persecuting him. Mr. Vestal has testified that this conspiracy has included (1) blacklisting him and rendering him unemployed and unemployable in his trade, while a member of the Teamsters International, (2) threats and acts of violence against himself, his family, friends, and supporters, and (3) the financing of schemes to inspire or support lawsuits and prosecutions against himself, Local 327, and his supporters. It is alleged that Teamsters International has secretly supported these lawsuits against Local 327, and has otherwise denied financial benefits to Local 327. The purpose of these actions is allegedly to bankrupt the Local, create an excuse to place Local 327 in trusteeship, and thereby oust Mr. Vestal as President. The original plaintiffs contend that this conspiracy, if successful, would deprive the members of Local 327 of their right to have the Local led by its elected president in violation of § 101 of the L.M.R.D.A., *supra*. This Court's jurisdiction is based upon 29 U.S.C., §§ 412 and 529.

As shall hereinafter appear, these allegations need not be considered with regard to the disposition of either of these lawsuits insofar as Teamsters International is concerned. Section 302 of the L.M.R.D.A., *supra*, sets forth the lawful purposes for which a subordinate body of a labor organization, such as Local 327, may be placed in trusteeship by the superior body. More important to the determination of the validity of the present trusteeship, § 302 requires that such "[t]rusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship * * *." (Emphasis supplied.) L.M.R.D.A., § 302 *supra*.

■ The determination of whether or not there has been compliance with the constitution of Teamsters International is also necessary before the trusteeship can be presumed valid under § 304(c) of the L.M.R.D.A., *supra*. It is contended on behalf of Mr. Vestal, both as a plaintiff and as a defendant, that the constitution of Teamsters International permits an emergency trusteeship to be invoked solely upon the order of the General President of Teamsters International, and that no other official of that body can be delegated that authority. Article VI, Sec. 5, of the Constitution of Teamsters International provides:

"ART. VI, SEC. 5

"Power of General President to Appoint Trustees; Duties and Obligations of Local Unions Under Trusteeship

"Section 5(a). If the *General President* has or receives information which *leads him to believe* that any of the officers of a Local Union or other subordinate body are dishonest or incompetent, or that such organization is not being conducted in accordance with the Constitution and laws of the International Union or for the benefit of the membership, or is being conducted in such a manner as to jeopardize the interests of the International Union, or its subordinate bodies *or if* the *General President believes* that such action is necessary for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures or preventing any action which is disruptive of or inter-

feres with the performance or obligations of other members or Local Unions under collective bargaining agreements, or otherwise carrying out legitimate objects of the subordinate body, *he may appoint* a temporary Trustee to take charge and control of the affairs of such Local Union or other subordinate body; provided, however, that before the appointment of such temporary Trustee, the *General President shall set a time and place for a hearing* for the purpose of determining whether such temporary Trustee shall be appointed, and further provided that *where, in the judgment of the General President, an emergency situation exists* within the Local Union or other subordinate body, the temporary Trustee may be appointed prior to such hearing, but such hearing shall then commence within thirty (30) days and decision made within sixty (60) days after the appointment of such temporary Trustee; and further provided that in all cases the Local Union or other subordinate body shall be advised of the reason for the appointment. Adequate notice at least ten (10) days prior to the date of the hearing shall be given to the Local Union or other subordinate body involved. In the case of all hearings conducted prior to, or after the establishment of a Trusteeship, the *General President shall designate a panel* comprised of at least one (1) International Union Vice President and one (1) disinterested member of the International Brotherhood of Teamsters from the area involved. The General President may, at his discretion, appoint an employee of the International Union to such panel. *Such representatives shall make their recommendations to the General President orally or in writing* within thirty (30) days after the furnishing of the transcript of testimony, *and the decision* in the case *shall be made by the General President himself,* which decision shall be made within ten (10) days after such recommendations are received by him,

and the decision shall be promptly transmitted to the Local Union or other subordinate body. Appeals, if any, from determinations following such hearings shall be taken directly to the General Executive Board. Appeals, if any, from the decision of the General Executive Board shall be taken to the Convention by only the Local Union or subordinate body affected. Procedures on appeals under this Section, insofar as is consistent with this Section, shall be governed by the provisions of Article XIX. The International Union shall not be responsible for any actions or activities of a Local Union or other subordinate body under Trusteeship unless such actions or activities have been directed or authorized by the Trustee.

*"The General Executive Board may modify, or add to the procedures established herein for the purpose of assuring compliance with any applicable law.*

"(b). The Trustee shall be authorized and empowered to take full charge of the affairs of the Local Union or other subordinate body, to remove any or all officers and appoint temporary officers at any time during his Trusteeship, and to take such other action as in his judgment is necessary for the preservation of the Local Union or other subordinate body and its interests. The terms of office of officers so removed shall terminate as of the date of removal, unless otherwise absolved. The Trustee shall report from time to time on the affairs and transactions of the Local Union or other subordinate body to the General President. His acts shall be subject to the supervision of the General President. *The General President may remove Trustees* at any time *and may appoint successor Trustees."* (Emphasis supplied.)

The section clearly indicates that the authority to invoke a trusteeship upon a local union is solely vested in the General President. It is conceded on behalf of Teamsters International that in the in-

stant case the trusteeship was established upon the judgment, orders and purported authority of the General Vice-President, Frank Fitzsimmons, rather than that of the General President, James Hoffa. There has been a patent failure to comply with the above-quoted section on the part of Teamsters International. It is asserted on behalf of Teamsters International, however, that General President Hoffa delegated all of his duties and functions to General Vice-President Fitzsimmons, with an inherent delegation of all of the power and authority necessary to perform the requirements and duties of the office of General President during Hoffa's incarceration. This purported delegation took place at the 3rd Meeting of the General Executive Board of Teamsters International, held February 28–March 1, 1967. The minutes of that meeting, pages 7–9 in pertinent part, are hereinafter set forth.

President Hoffa stated to the General Executive Board:

" 'Therefore, *since my absence may only be temporary, a situation will result which was not within the intent of the International Constitution,* and which might require the convening of a new convention in a very short period of time, with all of the tremendous expense involved in that kind of endeavor.

" 'Accordingly, to avoid such situation and pursuant to Article IX, Section 2,[2] of the International Constitution, I designate General Vice President Fitzsimmons to perform the duties and functions normally performed by the General President (as set forth in Article VI,[3] and other provisions of the International Constitution) during my temporary unavailability.

" 'It is my recommendation that the General Vice President be paid a salary of $45,000.00 while performing such duties. This recommendation is subject to your approval under Article V, Section 1(a).[4]

" 'I also recommend that the General Executive Board acting under authority of Article VII, Section 2(d)[5] authorize General Vice President Fitzsimmons to sign checks or any other documents which require the signature of the General President.

" 'Please accept my sincere thanks and appreciation for your patience during this period of uncertainty as to my status.'

"First Vice President O'Brien assumed the chair at this time.

"Vice President Flynn made the following statement and motion:

" 'We have all heard the explanation of our General President with respect to the uncertainty of his present situation, and particularly the possibility of his being unavailable temporarily to perform his duties, and then being available again, pending further hearings and appeals and, we hope, ultimately a complete reversal of his conviction.

---

2. Article IX, Section 2 of the International Constitution deals with the duties of the General Vice President and provides: "The General Vice President shall assume such duties and perform such functions as may be delegated to him by the General President. He shall be permitted to maintain such other offices, positions and functions as the General President shall approve."

3. Article VI of the International Constitution is captioned "General President—Duties and Powers." Sections 1 and 2 of this Article are respectively entitled

"General Duties" and "Judicial Powers."

4. Article V, Section 1(a) provides that the General Vice President's salary and expenses, " * * * shall be determined by the General President subject to the approval of the General Executive Board."

5. Article VII, Section 2(d), of the International Constitution provides: "In the event of the incapacity of any person authorized by this Constitution to sign checks or documents, the General Executive Board shall designate another person to exercise such authority."

" 'For all those reasons I now make the following motion:

" '(1) That we concur in his designation of General Vice President Frank Fitzsimmons to perform the duties and functions normally performed by the General President (as set forth in Article VI and other provisions of the International Constitution) during the time the General President will be unavailable temporarily to perform such duties, as being in accordance with our interpretation of the International Constitution under these circumstances.

" '(2) That the General Vice President receive a salary of $45,000.00 per year while performing such duties.

" '(3) That the General Vice President be authorized to sign checks or any other documents which require the signature of the General President.

" '(4) *That this motion become effective on the day that the General President becomes temporarily unavailable.*'

"Vice President Trerotola seconded the motion which was passed unanimously. President Hoffa did not participate in the discussion or vote on the motion." (Emphasis supplied.)

Article VI, Section 2(a) of the International Constitution provides that the "General President shall have authority to interpret the Constitution and laws of the International Union and to decide all questions of law thereunder between meetings of the General Executive Board * * *." The delegation was made at the Executive Board Meeting and therefore Mr. Hoffa was not acting within the ambit of the above section at that meeting. Article IX, Section 1, however, provides in relevant part:

"The General Executive Board shall have the authority to interpret and apply the Constitution and laws of the International Union and to decide all questions of law thereunder subject to appeal to the next Convention. The General Executive Board shall have governing authority over the International Union and its subordinate bodies to the end of upholding the laws and policies of the Brotherhood as expressed in this Constitution."

The purported delegation of the "duties and functions" of the General President to the General Vice President was upon motion by Vice President Flynn to the Executive Board and was approved unanimously, including the expression that such delegation was in accordance with the Executive Board's interpretation of the International Constitution. Minutes, *supra,* at 8.

Counsel for Teamsters International has contended that this interpretation was proper, under the authority conferred by the above-quoted section of the International Constitution, and that this interpretation should not be disturbed by the court in the present case. Further contention is made on behalf of Teamsters International that this delegation was approved by all of the Joint Councils of Teamsters International, including Joint Council #87 with which Local 327 is affiliated, and this serves to ratify the interpretation made in making the delegation, or, at least, to lend weight to its correctness. There does not appear to be any provision for such a "ratification" in the Constitution of Teamsters International.

The relevant case authority indicates a judicial reluctance, but not a refusal, to enter the realm of construction and interpretation of constitutions of labor organizations. In Communications Workers of America v. N.L.R.B., 215 F.2d 835, 838 (2d Cir. 1954), the Court stated:

"We are prepared to give weight to the Union's interpretation of its own rules with respect to membership. But notwithstanding we cannot agree that Article VI, Section 5, of the Union Constitution can be construed as a denial of a member's right to resign."

In International Association of Machinists, et al. v. Friedman, 102 U.S.App.

D.C. 282, 285, 252 F.2d 846, 849 (1958), the Court recognized the importance of an interpretation by the Union of that International Union's constitution in the following words:

"This interpretation of the constitution, not inconsistent with its language, has been adopted by the Association's President, Executive Council, and Grand Lodge Convention, which measurably adds to its weight."

In English v. Cunningham, 108 U.S. App.D.C. 365, 367, 282 F.2d 848, 850 (1960), the Court stated that it deemed applicable the principle, "that courts will accept the correctness of an interpretation fairly placed on union rules by the union's authorized officials."

The case which is most in point to the present discussion, however, is Vestal v. International Brotherhood of Teamsters, 245 F.Supp. 623 (M.D.Tenn. 1965). There the Honorable William E. Miller was faced with an action in which Don Vestal, as President and Business Manager of Local 327, sought to prevent: (1) a mail referendum of only the freighters who were members of Local 327, regarding the issuance of a separate charter to that group, and (2) the subsequent issuance to that group of a separate charter on the basis of any such referendum.

The General President of Teamsters International had determined that such a referendum was proper under the International Constitution. His interpretation of the constitution was appealed to the General Executive Board and was affirmed by that body. With this background the Court stated:

"Consequently, if their interpretation is not unreasonable, this court should not interject an interpretation of its own. We must examine § 1(h) then only to the extent of determining whether or not the defendants' interpretation is reasonable."

The Court found the interpretation unreasonable, declared the referendum null and void, and enjoined the defendants from taking any steps to effectuate the issuance of the separate charter on the basis of the referendum. This Court finds that the same standard of review is applicable in the instant case and the interpretations made by the officials of Teamsters International will be so considered.

It now becomes important to define the areas to be considered by the Court in order to dispose of the matters pending. This Court finds that it is unnecessary and improper to determine whether the interpretation of Article IX, Section 2, of the International Constitution as permitting the delegation to the General Vice President of each and every duty, function, power, and element of discretion granted to the General President by the International Constitution was reasonable. This Court shall determine only whether or not the constitution authorized a delegation of the authority, judgment, and discretion involved in invoking an emergency trusteeship over a local union, the appointment of a panel to conduct a hearing, and the decision as to whether or not the trusteeship should be continued as required by Article VI, Section 5(a), *supra*. As previously emphasized, this section vests the General President solely with the authority to exercise his personal judgment in invoking a trusteeship and appointing a panel to conduct a hearing. The section further requires that the decision as to whether or not the trusteeship should be continued be " * * * made by the General President himself." It is conceded on behalf of Teamsters International that the decision to continue the trusteeship was made by the General Vice President rather than the General President, but reliance is again placed upon the attempted delegation *in toto* of all of the duties and functions of the General President, with the inherent delegation of all requisite powers, to the General Vice President.

■ In the face of such specific, unambiguous language requiring the personal participation of the *General*

*President* and a decision by him, and in the absence of any provision whatsoever for the delegation of this particular power to anyone, this Court finds it unreasonable to interpret Article IX, Section 2, which indicates the General Vice President "shall assume such duties and perform such functions as may be delegated to him by the General President," as a sufficient basis upon which to delegate those particularly personal powers involved in the trusteeship process. The constitution clearly requires that the judgment involved shall be that of the General President. To the extent that reliance is placed upon Article IX, Section 2, Teamsters International cannot succeed. The same conclusion is warranted regarding Article VII, Section 2(d), which is irrelevant to the present issue.

These determinations are not sufficient, however, to resolve the questions concerning Teamsters International's compliance with its own constitution in the imposition and continuance of the subject trusteeship. Article VI, Section 5(a), as set out *supra*, contains the following provision:

> "The General Executive Board may modify or add to the procedures established herein [regarding trusteeships] for the purpose of assuring compliance with any applicable law."

While not raised as an issue by the parties, the Court has considered the possibility that the General Executive Board has modified these regulations of the International Constitution so as to permit the General Vice President to exercise the powers necessary to impose and continue a trusteeship. All of the arguments and theories of Teamsters International have indicated that such a modification was felt to be unnecessary. No proof was submitted to this Court that the Executive Board has ever considered the possibility of such a modification, much less made one. The Court is not willing to, and shall not, presume to assume what course the General Executive Board would take upon consideration of this possibility. The Court does not determine whether or not such an attempted modification would be "for the purpose of assuring compliance with any applicable law," or would be an unauthorized attempt to amend the constitution.

For the above reasons this Court finds that Teamsters International has failed to comply with the provisions of its own constitution in the imposition of an emergency trusteeship upon Local 327, in the appointment of a panel to conduct the required hearing, or in the decision to continue the trusteeship. For these reasons the trusteeship is deemed void, invalid, and unlawful under § 302 of the L.M.R.D.A., *supra,* and its continuance is hereby enjoined pursuant to this Court's jurisdiction under § 304 of that Act, *supra.* The relief prayed for in Civil Action No. 6138 is accordingly denied.

Only the claims for relief by the original plaintiffs as against defendants Wingo, Ellis, and Mathis remain. Counsel for the original plaintiffs clearly indicated at trial that no damages were sought as against these defendants. Therefore, only the propriety of injunctive relief is before the Court as to these defendants.

■ As to defendant Wingo, evidence has been introduced which indicates that this defendant has consistently and vigorously sought the imposition of trusteeship upon Local 327. This defendant admits, indeed asserts, these activities. The critical proof necessary to demonstrate that he has been involved in a conspiracy, or has attempted as an individual to deprive any member of Local 327 of any right protected or created by the L.M.R.D.A., *supra,* has not, however, been forthcoming. Injunctive relief as to this defendant is denied.

■ As to defendant Mathis, uncontroverted proof has been introduced to show that he was detected in the Union Hall of Local 327 on Sunday, March 7, 1971, by a security officer for the burglar alarm company. It is also un-

controverted that Mr. Mathis had gained entry to the Union Hall by using a key. The Secretary-Treasurer of Local 327, defendant Ellis, confirmed Mr. Mathis' statement to the security officer that Mathis had permission to be in the Union Hall at that time. The proof submitted is insufficient to support granting the relief requested as to this defendant.

The allegations regarding defendant Ellis are numerous and will be considered in the order in which they are raised in the Second Amended, and First Supplemental Complaints. Paragraph 11 of the Second Amended Complaint alleges that defendant Ellis violated Titles I, V and VI of 29 U.S.C. § 401 *et seq.* These violations are alleged to have occurred when: (1) Mr. Ellis allegedly "attempted to take control of the Local Union newspaper in violation of the bylaws of the Local Union for the purpose of giving employees, who were attempting to extort the public and give the Local bad publicity, and to give grounds for the Local to be put under trusteeship"; and (2) "Mr. Ellis furnished the defendant, Mathis, with keys to the Union Hall for the purpose of shooting up the offices, and then told the police that Mr. Mathis was authorized to be in the Union Hall at 10:15 P.M. on Sunday, March 7, 1971." No proof has been introduced which would tend to support the first allegation. As to the second allegation, the evidence does not indicate that Mr. Mathis did the shooting as alleged, or that Mr. Ellis gave him the keys to the building for that purpose.

■ Paragraph 12 of the Second Amended Complaint alleges that Mr. Ellis cooperated with an International Audit in making "pictures of books and records, not only of the Local Union, but of the Credit Union records and trust fund records * * * in violation of Titles III and V of 29 U.S.C. § 401, *et seq.*" The Court is of the opinion that this allegation fails to state a claim upon which

relief can be granted under Title III, and that the proof does not establish a violation of Title V. In addition, the plaintiffs, having failed to obtain the requisite leave of court as provided by 29 U.S.C. § 501(b),[6] are without proper standing.

■ Paragraph 4 of the First Supplemental Complaint alleges that on the night of April 15, 1971, after defendant Ellis telephoned threats to Mr. Vestal, defendant Ellis and three companions drove to the home of Don Vestal. Upon arriving, Ellis and his companions are alleged to have fired numerous bullets into Vestal's home. Ellis is alleged to have thereby violated Title I of the Act, and 29 U.S.C. § 530. From the facts and evidence introduced on behalf of the original plaintiffs, it appears to the Court that the alleged shooting did in fact take place, and that shots were fired from the car in which Ellis was driving, and into it from the direction of Vestal's house.

It further appears to the Court that this shooting took place after Mr. Vestal had fired Mr. Ellis as a Business Agent for Local 327. The interpretation of this incident in the light most favorable to the original plaintiffs is insufficient to state a cause of action under Title I, the "bill of rights" portion of the L.M.R.D.A., *supra*. Section 610 of the L.M.R.D.A., 29 U.S.C. § 530, provides as follows:

"*Deprivation of Rights Under Act by Violence* (29 U.S.C. 530)

"Sec. 610. It shall be unlawful for any person through the use of force or violence, or threat of the use of force or violence, to restrain, coerce, or intimidate, or attempt to restrain, coerce, or intimidate any member of a labor organization for the purpose of interfering with or preventing the exercise of any right to which he is entitled under the provisions of this

---

6. 29 U.S.C. § 501(b) permits suit as against an officer of a labor organization for violation of his official duties, but also provides: "No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte."

Act. Any person who willfully violates this section shall be fined not more than $1,000 or imprisoned for not more than one year, or both."

There has been no allegation and no proof as to any right afforded Vestal under this Act which Ellis' wrongful conduct was intended to prejudice or prejudiced in fact. The testimony submitted on behalf of the original plaintiffs regarding this incident more clearly establishes personal resentment against Vestal as the reason for the shooting. Viewed from the point of view of defendant Ellis, any firing from his car was in response to shots fired at him. This view was expressed to the Court by witnesses presented on behalf of the original plaintiffs, since Mr. Ellis did not testify or call any witnesses on his own behalf. As proceedings arising out of this shooting are now pending on the state court level, this Court shall not make unnecessary determinations when the incident has not been shown to be material to the present case.

Paragraph 5 of the First Supplemental Complaint alleges that the automobile used by defendant Ellis, which is the property of Local 327, was replevined from the city auto pound on April 16, 1971, the day following the shooting. It is further alleged that examination of the automobile revealed checks, totaling $1,735.25, which belonged to the Local Union, and had already been received at the Local Union offices and entered on the books of the Local Union. The proof has supported this allegation to that extent, but it is further alleged that Mr. Ellis had absconded. The trusteeship was not imposed until April 19, 1971. At the time the automobile was replevined Mr. Ellis was still the Secretary-Treasurer of Local 327. His silence leaves his possession of the checks unexplained. The proof does not establish by a preponderance of the evidence that Mr. Ellis had possession of these checks for an unlawful purpose. It is contended, however, that Mr. Ellis has failed "to hold its [Local 327's] money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and by-laws and any resolutions of the governing bodies adopted thereunder * * *." Sec. 501, L.M.R.D.A., 29 U.S.C. § 501. The requisite leave to make such complaint was granted by the Court by its order permitting the filing of the First Supplemental Complaint. 29 U.S.C. § 501(b), supra. Sec. 3, Paragraph 5, of the "BY-LAWS" of Local Union 327 provides:

"The Secretary-Treasurer shall receive all monies paid to the Local Union, giving receipt therefor, for any dues, initiation fees or other fees, assessments or fines. All monies received from any source whatever shall be deposited in such reliable bank or banks in the name of the Local Union at least twice a month or oftener if possible, as the Executive Board may designate from time to time."

No other provision appears to have been made in the By-laws of the Local regarding the disposition of funds received by the Secretary-Treasurer on behalf of Local 327. No further evidence appears to have been submitted which would be relevant to this issue. It does not appear that Mr. Ellis has been shown to have violated 29 U.S.C. § 501, supra. It is as reasonable to speculate that Mr. Ellis had taken the checks to deposit as it is to draw any other inference.

For the above-stated reasons, the prayer for injunctive relief as to defendant Ellis is denied.

An order in conformity with this Memorandum shall be filed.